DAVE M. McGRAW (SBN 086439)
THOMAS A. TRAPANI (SBN 100387)
**Fidelity National Law Group**
**The Law Division of Fidelity National Title Group, Inc.**
1550 Parkside Drive, Suite 300
Walnut Creek, CA 94596
Telephone: (925) 930-9550
Facsimile: (925) 930-9588

Attorneys for Plaintiff
BANK OF AMERICA, N.A.

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>BERT BIRMINGHAM,<br><br>    Debtor(s)<br><hr>BANK OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>SERGIO ROLDAN, BERT BIRMINGHAM, LORETTA L. BIRMINGHAM, LEXINGTON NATIONAL INSURANCE COMPANY, THE FORECLOSURE COMPANY, INC. and Chapter 13 Trustee,<br><br>    Defendants. | Case No.: 16-53437 MEH<br><br>Chapter 13<br><br>Adversary No.: 18-05025<br><br>**AMENDED** MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF BANK OF AMERICA, N.A.'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED (Rule 65)<br><br>*(Replaces Memorandum of Points and Authorities filed June 14, 2018, Docket #4, Attachment 1)*<br><br><br>**Judge:** M. Elaine Hammond |

## I.    INTRODUCTION

By this *ex parte* application, Plaintiff BANK OF AMERICA, N.A. seeks a temporary restraining order and/or an order to show cause why a preliminary injunction should not be issued to prevent the Defendants and/or anyone connected with them from selling Defendants BERT L. BIRMINGHAM and

1
AMENDED MPAs ISO EX PARTE APPLICATION FOR A TRO AND/OR INJUNCTION

LORETTA L. BIRMINGHAM's single-family residence pending the outcome of Plaintiff's Adversary Complaint. A temporary restraining order and/or issuance of an order to show cause is appropriate because it is reasonably probable that the Plaintiff will prevail on its claims for relief for a determination that the attorney fees judgment is not an allowed secured claim, a determination of the exact value of the claim that is secured by a deed of trust, specific performance, cancellation of deed of trust, an accounting, declaratory relief and injunctive relief against a premature trustee's sale in this Adversary proceeding. Thus, there is a reasonable probability that even if the state court does not grant the Plaintiff's equitable subrogation claim, this court will reduce the allowed secured claim enough for the property owners' son to keep his parents in their home by curing the default prior to any Trustee's sale.

Since MR. ROLDAN has persisted in trying to sell MR. and MRS. BIRMINGHAM'S property on June 15, 2018, well before this court can determine what, if any, amount is actually secured by his deed of trust, the Plaintiff has no choice but to bring this *ex parte* application. Since the Plaintiff is confident that the adversary action will allow the default to be cured prior to a sale, the Plaintiff is confident that the need to sell MR. and MRS. BIRMINGHAM'S home will not arise. Thus, Plaintiff BANK OF AMERICA, N.A. contends that a temporary restraining order and/or order to show cause are appropriate, necessary to protect Plaintiff's interest in the property and in the public interest.

## I. STATEMENT OF FACTS

Plaintiff BANK OF AMERICA, N.A. is the current holder of a promissory note for the payment of $425,190.00 that is secured by the Deed of Trust that was recorded at 8:49 a.m. on May 16, 2013 as Document Number 22222974 in the official records of Santa Clara County on property located at 1050 Ortega Circle, Gilroy, CA 95020. See **Exhibit 1** to the Adversary Complaint. The loan that is secured by the **Exhibit 1** deed of trust refinanced an earlier deed of trust that was recorded at 8:00 a.m. on October 18, 2006 as Document Number 19146555 in the official records of Santa Clara County. See **Exhibit 7** and **Exhibit 8** to the Adversary Complaint. As a result, $419,952.31 of the loan proceeds from the May, 2013 loan were used as a "payoff to Bank of America" to satisfy a loan obligation that pre-dated MR. ROLDAN's March 22, 2007 lien. See **Exhibit 8** to the Adversary Complaint.

Defendant SERGIO ROLDAN is the current holder of a promissory note for payment of $60,476.00 that is secured by the Deed of Trust that was recorded at 8:00 a.m. on March 22, 2007 as

2

AMENDED MPAs ISO EX PARTE APPLICATION FOR A TRO AND/OR INJUNCTION

Document Number 19352696 in the official records of Santa Clara County on the same property. See **Exhibit 2** to the Adversary Complaint. The **Exhibit 2** deed of trust was the subject of a legal action that ultimately resulted in a judgment that affirmed its validity. **Exhibit 11** to the Adversary Complaint.

Defendant SERGIO ROLDAN claims that since the **Exhibit 2** deed of trust was recorded before the **Exhibit 1** deed of trust, the **Exhibit 2** deed of trust has priority over the **Exhibit 1** deed of trust. On the other hand, Plaintiff BANK OF AMERICA, N.A. claims that under the doctrine of equitable subrogation, its **Exhibit 1** deed of trust has priority over the **Exhibit 2** deed of trust. As a result, the purpose of the pending California Superior Court action is to quiet Plaintiff BANK OF AMERICA, N.A.'s title and/or to remove any cloud on its title to its first position security interest in the property.

In addition to the priority issue, there are issues about the exact value of the indebtedness that is secured by MR. ROLDAN's deed of trust. For example, the **Exhibit 2** Deed of Trust provides that the performance of each agreement of MR. and MRS. BIRMINGHAM incorporated by reference or contained in the deed of trust is "so secured." Furthermore, Section A(3) of the Deed of Trust provides that to protect the security of the Deed of Trust, MR. and MRS. BIRMINGHAM agreed to appear in and defend any action or proceeding purporting to effect their security or the rights or powers of MR. ROLDAN or the trustee. They also agreed to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which MR. ROLDAN or the trustee may appear, and in any suit brought by MR. ROLDAN to foreclose the deed of trust.

Section B(5) provides that as additional security, MR. and MRS. BIRMINGHAM gave MR. ROLDAN the right, power and authority to collect the rents, issues and profits of the property. The section authorizes MR. and MRS. BIRMINGHAM to take possession of the property, or to sue for or otherwise collect rents, issues, and profits, and apply those, less costs and expenses, including reasonable attorney's fees, to any secured indebtedness.

On March 21, 2013, MR. and MRS. BIRMINGHAM filed a Complaint For Cancellation of Deed of Trust and To Quiet Title to Real Property against MR. ROLDAN in Santa Clara County action number 1-13-CV-243356. See **Exhibit 12** to the Adversary Complaint. On December 3, 2014, the Court entered a Judgment denying MR. and MRS. BIRMINGHAM's prayer (1) for a declaration that the Deed of Trust is void and invalid, (2) for a judgment which would expunge the Deed of Trust *nunc*

*pro tunc* and (3) for a judgment quieting title and declaring that MR. and MRS. BIRMINGHAM were the owners in fee simple of the property and that MR. ROLDAN had no interest in the property adverse to MR. and MRS. BIRMINGHAM.  See **Exhibit 13** to the Adversary Complaint.

On February 27, 2015, the Superior Court entered an Order RE Attorney Fees granting MR. ROLDAN $43,119.00 in attorney fees against MR. and MRS. BIRMINGHAM.  See **Exhibit 13** to the Adversary Complaint.  The California Court of Appeal upheld the Judgment and the award of attorney fees in an unpublished opinion and the remittitur was issued on September 27, 2016.  Declaration of Thomas A. Trapani (hereinafter "Trapani Decl.") ¶ 6.

MR. ROLDAN and MR. and MRS. BIRMINGHAM thereafter stipulated that the reasonable attorney fees to be awarded to MR. ROLDAN for the appeal was $18,500.00, bringing the total of attorney fees and costs to $69,317.39 in October, 2016.  Trapani Decl. ¶ 7.  There was nothing in either the court order or the stipulation to indicate that the award of attorney fees would be secured by MR. ROLDAN's Deed of Trust.  Trapani Decl. ¶ 8.

Although the award of attorney fees against MR. and MRS. BIRMINGHAM is separate from the deed of trust, MR. ROLDAN'S attorney now claims that the attorney fee awards are secured by the deed of trust.  Trapani Decl. ¶ 9.  Thus, the $201,914.98 amount stated in the Notice of Trustee's Sale (see **Exhibit** 15 to Adversary Complaint) includes the attorney fee awards plus interest. Trapani Decl. ¶ 10.

As the holder of a Deed of Trust that was recorded after the **Exhibit 2** Deed of Trust, Plaintiff may wish to cure the default prior to the June 15, 2018 Trustee's sale.  Trapani Decl. ¶ 11.  It all depends on what this Court determines is the exact amount of the secured indebtedness. Trapani Decl. ¶ 12.  So, without a determination by this Court whether the attorney fees judgment is an allowed secured claim or not, neither the owners' son nor the Plaintiff are able to determine the level of payment necessary to cure the amount secured by the Deed of Trust prior to a Trustee's sale. Trapani Decl. ¶ 13.

For these reasons, the Plaintiff hereby requests this Court to determine that the attorney fees judgment in favor of MR. ROLDAN, plus interest, is not an allowed secured claim and therefore, subject to discharge in this bankruptcy proceeding.  Trapani Decl. ¶ 14.  At a minimum, Plaintiff requests this Court to determine that the attorney fees are not secured by the **Exhibit 2** Deed of Trust and therefore, not part of the funds needed to cure the default and avoid the sale.  Trapani Decl. ¶ 15.

4
AMENDED MPAs ISO EX PARTE APPLICATION FOR A TRO AND/OR INJUNCTION
Case: 18-05025    Doc# 6    Filed: 06/13/18    Entered: 06/13/18 14:09:45    Page 4 of 10

Prior to 10 a.m. on June 13, 2018, Plaintiff's counsel, Thomas A. Trapani, provided notice to counsel for all parties, including MR. ROLDAN, his bankruptcy trustee and MR. and MRS. BIRMINGHAM, that Plaintiff BANK OF AMERICA, N.A. would be making this *Ex Parte* Application on the afternoon of Thursday, June 14, 2018. Trapani Decl. ¶16.

## ARGUMENT

### A. Standards for TRO/Preliminary Injunction

According to Rule 65 (Injunctions and Restraining Orders):

(a) Preliminary Injunction
 (1) *Notice*. The court may issue a preliminary injunction only on notice to the adverse party.
 (2) *Consolidating the Hearing with the Trial on the Merits*. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
(b) Temporary Restraining Order
 (1) *Issuing Without Notice*. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
  (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
  (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
 (2) *Contents; Expiration*. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.
 (3) *Expediting the Preliminary Injunction Hearing*. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.
 (4) *Motion to Dissolve*. On 2 days' notice to the party who obtained the order without notice – or on shorter notice set by the court – the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.
(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers property to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Temporary Restraining Orders "preserve the status quo pending a hearing." *Hoffman v. International Longshoremen's & Warehousemen's Union, Local No. 10* (9th Cir. 1974), *aff'd sub nom. Muniz v. Hoffman* (1975) 422 U.S. 454. A motion for a TRO or preliminary injunction requires the Court to make four findings as to the moving party: that "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in its favor; and (4) an injunction is in the public interest." *Pom Wonferful LLC v. Hubbard* (9th Cir. 2014) 775 F. 3d 1118, 1124 (citing *Winter v. Natural Res. Def. Council, Inc.* (2008) 555 U.S. 7, 20. All that the Plaintiff seeks to do here is to maintain the status quo while both sides prepare for a hearing on the merits of the Plaintiff's claims. *Hoffman, supra* at 933. Therefore, all four conditions for a temporary restraining order are met and support the preliminary relief requested by the Plaintiff.

### B. There is a Reasonable Probability That Plaintiff Will Prevail

If not stopped, the sale of MR. and MRS. BIRMINGHAM's property would leave them without their home of forty years and Plaintiff BANK OF AMERICA, N.A. without security for its performing loan. Trapani Decl. ¶ 17. BANK OF AMERICA, N.A. has a pending action in the state court for equitable subrogation, among other claims. Trapani Decl. ¶ 18. BANK OF AMERICA, N.A. is seeking leave to amend the state court complaint to add causes of action for similar relief to that sought by the Adversary Complaint in this proceeding. Trapani Decl. ¶ 19.

Even if BANK OF AMERICA, N.A. does not prevail on its equitable subrogation claim, BANK OF AMERICA, N.A. has a substantial chance of reducing the amount secured by MR. ROLDAN's Deed of Trust to a sum that can be cured by MR. and MRS. BIRMINGHAM's son, Jeff Whalen, the Plaintiff or both in order to prevent a Trustee's sale. Trapani Decl. ¶ 20. There is no order of the court adding the value of recovered attorney fees to the debt that is secured by MR. ROLDAN's Deed of Trust. Trapani Decl. ¶ 8. Furthermore, there is no logical reason why those recovered attorney fees should be added to the value of the secured indebtedness. Trapani Decl. ¶ 21. While MR. ROLDAN's Deed of Trust secured Mr. Whalen's debt to MR. ROLDAN, the attorney fees became the debt of MR. and MRS. BIRMINGHAM. Trapani Decl. ¶ 22. Therefore, since the obligations are separable, the attorney fees award should be dischargeable in MR. and MRS. BIRMINGHAM's bankruptcy action. Trapani Decl. ¶ 23.

Furthermore, there is substantial evidence that MR. and MRS. BIRMINGHAM paid MR. ROLDAN $60,000 of the $60,478 that is secured by the **Exhibit 2** Deed of Trust.  See **Exhibit 10** to the Adversary Complaint.  So, the evidence shows that almost all of the indebtedness that is secured by MR. ROLDAN's Deed of Trust was already paid to MR. ROLDAN.  **Exhibit 10** to the Adversary Complaint.  As a result, the Deed of Trust should have been reconveyed.  **Exhibit 10** to the Adversary Complaint.

In addition, the California superior and appellate courts concluded that either there was never a promissory note to begin with or the promissory note that evidenced Mr. Whalen's debt was lost.  Trapani Decl. ¶ 24.  So, there is no foundation for adding interest to the $60,478 indebtedness that is secured by MR. ROLDAN's Deed of Trust.  Trapani Decl. ¶ 25.

These valuation issues are of vital importance to the current attempts to sell MR. and MRS. BIRMINGHAM'S property.  Trapani Decl. ¶ 26.  If there is little or no indebtedness secured by MR. ROLDAN's Deed of Trust, then BANK OF AMERICA, N.A. and Mr. Whalen must have an opportunity to cure any default before MR. and MRS. BIRMINGHAM's home is sold.  Trapani Decl. ¶ 27.  Otherwise, MR. and MRS. BIRMINGHAM's home could be lost to a third party without justification.  Trapani Decl. ¶ 28.

"At a nonjudicial foreclosure sale the lender-beneficiary is entitled to make a credit bid up to the amount of his indebtedness, since it would be pointless to require the bidder to tender cash that would only be immediately returned to him." *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 356, 105 Cal.Rptr.2d 749.  A credit bid equal to the amount of the unpaid principal and interest, plus the costs, fees and other expenses of the sale, is known as a full credit bid. *Kolodge, supra* at 356.  When the lender purchases the property by making a full credit bid, he effectively is paid the full amount of the debt, consequently, the debt is satisfied and the lien is extinguished. *Kolodge, supra* at 356.

For these reasons, even if MR. and MRS. BIRMINGHAM's property is not purchased by a third party, this Court must determine the amount owed to MR. ROLDAN to know the amount he can credit bid towards the purchase of the property.  Trapani Decl. ¶ 29.  Certainly, if the attorney fees award is not secured by MR. ROLDAN's Deed of Trust, then the value of those attorney fees would not be available for MR. ROLDAN's credit bid.  Trapani Decl. ¶ 30.  Since this number could affect the conduct of the Trustee's sale, the issue must be resolved before the property can be sold.  Trapani Decl. ¶ 31.

Since MR. and MRS. BIRMINGHAM are not in default of the $425,190.00 BANK OF AMERICA, N.A. loan, BANK OF AMERICA, N.A. has no reason to foreclose on MR. and MRS. BIRMINGHAM'S property. Trapani Decl. ¶ 32. Thus, if very little debt is secured by MR. ROLDAN's Deed of Trust, it is unlikely that the property will ever be sold. Trapani Decl. ¶ 33. So, these issues must be litigated and resolved before the Trustee's sale can proceed. Trapani Decl. ¶ 34.

Clearly, BANK OF AMERICA, N.A. and MR. and MRS. BIRMINGHAM are entitled to an adjudication of BANK OF AMERICA, N.A.'s various claims before any Defendant should be able to pursue a Trustee's sale of the property. Trapani Decl. ¶ 35.

### C. Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Relief

If BANK OF AMERICA, N.A.'S request for relief is not granted, the harm to BANK OF AMERICA, N.A. is irreparable. Trapani Decl. ¶ 36. Since Plaintiff's Complaints have not been adjudicated yet, MR. ROLDAN intends for the trustee to sell the property as if MR. ROLDAN is the first position lien holder. Trapani Decl. ¶ 37. Thus, MR. ROLDAN intends to ward off all other purchasers with a $201,914.98 credit bid to secure ownership of the property. Trapani Decl. ¶ 38. This is based on his unsubstantiated claim that his attorney fees award is secured by his Deed of Trust, which is currently in the first position on the property. Trapani Decl. ¶ 39. These are hotly contested issues that have yet to be decided by any court. Trapani Decl. ¶ 40. Therefore, there is no reason at all why MR. ROLDAN should be able to extinguish Plaintiff's alleged $425,190 junior encumbrance using a $201,914.98 credit bid. *Kolodge, supra* at 356.

If the sale were to happen as MR. ROLDAN envisions and BANK OF AMERICA, N.A. later prevailed on any or all of its claims, BANK OF AMERICA, N.A. would be irreparably harmed by the loss of its security interest in the property. Trapani Decl. ¶ 41. Since the property will be sold subject to the *lis pendens*, there is no way for a sale to net a true value for the property. Trapani Decl. ¶ 42. So, if a temporary restraining order is not issued, the sale of the property would undermine the Court's ability to order an adequate and effective remedy if BANK OF AMERICA, N.A. were to prevail on its claims. See *FTC v. Swedish Match N. Am., Inc.* (D.D.C. 2000) 131 F. Supp.2d 151, 173 (noting that the "absence of an injunction will also make it impossible to accomplish full relief"). Since MR. ROLDAN has already filed for bankruptcy, he would not have the resources to compensate BANK OF AMERICA,

N.A. for the harm it would suffer from being sold out in a junior position at the time of the sale. *Kolodge, supra* at 356. So, BANK OF AMERICA, N.A.'s current security would be lost forever. Trapani Decl. ¶ 43.

The situation would be very different if BANK OF AMERICA, N.A. were allowed to cure the default to prevent a sale. Trapani Decl. ¶ 44. If BANK OF AMERICA, N.A. were allowed to cure the default to prevent a sale, there would be no irreparable harm to anyone. Trapani Decl. ¶ 45. So, if Plaintiff BANK OF AMERICA, N.A. is allowed to succeed on any of its claims for relief in this Court before a sale, there will be no money to pay back and no irreparable injury to anyone. Trapani Decl. ¶ 46. So, clearly, resolution of BANK OF AMERICA, N.A.'s claims before a Trustee's sale is necessary to protect BANK OF AMERICA, N.A. from irreparable harm. Trapani Decl. ¶ 47.

### D. The Balance of Equities Is In Plaintiff BANK OF AMERICA, N.A.'s Favor

For all of the reasons stated, there is no reason for an early trustee's sale of the property. This is certainly true when there are substantial questions of what, if any, debt is secured by MR. ROLDAN's Deed of Trust. The property should remain as security for both deeds of trust pending the resolution of the substantial issues raised by the Plaintiff's state court and adversary complaints.

There is no risk of harm to MR. ROLDAN if the Trustee's sale is postponed until the adversary complaint is resolved. The worst that happens is that MR. ROLDAN wins the lawsuit and ultimately purchases the property through his eventual full credit bid. The opposite is true if the sale proceeds. Once the property is sold, the security for MR. and MRS. BIRMINGHAM's $425,190 loan is irretrievable.

For these reasons, the balance of equities strongly favors BANK OF AMERICA, N.A. in this matter. Given the merits of its claims to equitable subrogation in the superior court lawsuit and its claims that there is little indebtedness that is currently secured by MR. ROLDAN's Deed of Trust, BANK OF AMERICA, N.A. should have the right to prove its position and cure any remaining default before MR. ROLDAN can instruct his Trustee to sell the property. So, this Court should prevent any sale until the Adversary Complaint is fully resolved.

///

///

### E. The Relief Sought is in the Public Interest

It is in the public interest for MR. and MRS. BIRMINGHAM to keep their home of forty (40) years. Furthermore, it is in the public interest for debtors to be able to cure their defaults before their properties are sold. Therefore, the Plaintiff should be given every opportunity to prevent the sale of MR. and MRS. BIRMINGHAM's home through a favorable resolution of BANK OF AMERICA, N.A.'S state and bankruptcy court complaints. As a result, since the relief sought by BANK OF AMERICA is designed to allow MR. and MRS. BIRMINGHAM's son (i.e., Mr. Whalen) to cure the default without losing MR. and MRS. BIRMINGHAM's home, and thereby stop an unnecessary sale of their property, granting the relief sought is clearly in the public's interest.

### CONCLUSION

In the face of a threatened June 15, 2018 sale of MR. and MRS. BIRMINGHAM's property, Plaintiff BANK OF AMERICA, N.A. is in imminent danger of losing its security for its $425,190 loan. Since this is a security interest that would not be in jeopardy were BANK OF AMERICA, N.A. to succeed on its Adversary Complaint, Plaintiff BANK OF AMERICA, N.A. respectfully asks the Court to issue a temporary restraining order and/or an order to show cause why a preliminary injunction should not issue, on shortened time, thereby preventing Defendant SERGIO ROLDAN's threatened June 15, 2018 sale of MR. and MRS. BIRMINGHAM's property.

Dated: June 13, 2018

FIDELITY NATIONAL LAW GROUP
The Law Division of Fidelity National Title Group, Inc.

By: /S/ Thomas A. Trapani
THOMAS A. TRAPANI, Attorneys for
Plaintiff BANK OF AMERICA, N.A.